## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |  |
|---|---|---|
| MARGARET LITTLEJOHN | ) | Case No. 24-cv-1637 |
| 215 Gingrich Drive | ) | |
| Accokeek, MD 20607 | ) | |
|  | ) | |
| Plaintiff | ) | |
|  | ) | |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) | |
| ROSTIN BEHNAM, CHAIRMAN, | ) | |
| COMMODITY FUTURES TRADING | ) | |
| COMMISSION | ) | |
| Three Lafayette Centre | ) | |
| 1155 21st Street, NW | ) | |
| Washington, DC 20581 | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## COMPLAINT

Plaintiff MARGARET LITTLEJOHN, by her undersigned counsel, hereby complains of Defendant ROSTIN BEHNAM, in his official capacity as Chairman, Commodity Futures Trading Commission, as follows:

## NATURE OF THE CASE

1. Margaret Littlejohn began working for Defendant in October 2009.

2. She filed a discrimination complaint against Defendant in 2019 and she filed a second complaint in 2021.

3. The parties resolved the complaints through settlement on October 16, 2021.

4. On October 24, 2021, Defendant reassigned Littlejohn to a Program Analyst position in another division.  However, Defendant did not assign her any duties, despite her repeated requests for work assignments.  Littlejohn's first-line supervisor stopped communicating with

her in February 2022.

5.   Although Defendant continued to pay Littlejohn, he effectively killed her career.  Littlejohn had no opportunity to hone existing skills or to develop new ones, or to interact and network with colleagues and stakeholders.

6.   And forget about applying for a promotion or another job.  How would she have responded when a prospective employer asked what she did in her current role?

7.   Littlejohn brings this action to recover damages for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII").

## JURISDICTION AND VENUE

8.   This Court maintains jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant has employed Littlejohn in the District of Columbia, at all relevant times.

## THE PARTIES

10.  At all relevant times, Littlejohn worked for Defendant and was Defendant's employee within the meaning of and entitled to the protections of Title VII.

11.  Defendant is named in his official capacity as Chairman of the Commodity Futures Trading Commission.  At all relevant times, Defendant was Littlejohn's employer within the meaning of and subject to the requirements of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.  Littlejohn exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.

13.  June 23, 2023, Littlejohn timely filed a formal complaint of discrimination.

14.  By letter dated October 5, 2023, Defendant accepted Littlejohn's complaint for investigation.

15. Defendant sent Littlejohn the Final Agency Decision ("FAD") on March 6, 2024.

16. Littlejohn timely files this lawsuit within 90 calendar days of receipt of the FAD.

## STATEMENT OF FACTS

### *Littlejohn is a member of a protected class.*

17. Littlejohn is African American.  At all relevant times, Defendant has been aware of her race, which is evident based on her physical appearance.

18. In October 2009, Littlejohn began working for Defendant in the division that is now called the Division of Clearing and Risk (DCR).

19. Pursuant to a reorganization in December 2017, Defendant moved Littlejohn to the Business Management Section (BMS), in the position of Business Management Specialist, CT-301-14, Office of the Executive Director, Business Management and Planning Branch, BMS.

### *Littlejohn engaged in protected activity.*

20. Littlejohn filed a discrimination complaint against Defendant in 2019

21. She filed a second complaint in 2021.

22. On October 16, 2021, the parties agreed to settle both complaints.

### *Defendant reassigned Littlejohn but refused to give her duties.*

23. Defendant reassigned Littlejohn to the position of Program Analyst, CT-0343-14, Bargaining Unit, DCR, on October 24, 2021.

24. In that role, Littlejohn's first-line supervisor was Malcolm Clark Hutchison, III (Caucasian, no protected activity), Director of DCR.

25. Littlejohn did not have her first call with Hutchison until November 18, 2021.

26. During the call, Hutchison confirmed to Littlejohn that she would not have to do any work for BMS, the office from which she was reassigned, or engage with BMS staff.

27. Hutchison said he wanted Littlejohn to help with budget documents and budget data calls. He specified that he would have another employee send the completed documents to BMS so that Littlejohn would not need to interact with BMS staff.

28. Hutchison's assurance that she would not have to work for or with BMS was comforting to Littlejohn, who filed discrimination complaints against her former supervisors in BMS.

29. But contrary to what he said at the meeting, the very next day, November 19, 2021, Hutchison emailed Littlejohn an invitation to a meeting to discuss staffing and hiring, which was a Human Resources ("HR") function under BMS.

30. Littlejohn responded to Hutchison the same day, reminding him that HR, like financial management activities, is a business function under Hoa Kern (Asian, no protected activity), her former direct supervisor in BMS, whom she named as a responsible management official in her prior EEO cases.

31. Per Hutchison's statements on November 18, that she was not to do work for BMS or engage with BMS staff, Littlejohn would be unable to attend the staffing and hiring meeting.

32. On November 20, 2021, Hutchison responded to Littlejohn by email, telling her to come to the meeting anyway and claiming that "[t]his isn't an hr meeting – this is an internal planning meeting where we decide how we're going to staff ourselves."

33. On November 22, 2021, Littlejohn forwarded Hutchison's email to Sarah Summerville, former Acting Director, of Defendant's Office of Minority and Women and Inclusion ("OMWI"), and Darlene Thompson, who was a contractor in OMWI at the time, stating that Hutchison needed clarity about her new role and that she felt she was in an awkward position having to tell Hutchison what she could and could not do.

34. On November 24, 2021, Littlejohn emailed Thompson to request an update.  Thompson

responded that a meeting was being scheduled and/or held with Hutchison to discuss the duties that were not in Littlejohn's Position Description ("PD").

35. Littlejohn responded that she would benefit from a similar discussion if what she considered BMS work differed greatly from what Hutchison was being told.

36. Littlejohn reiterated that she did not want to be in a position of having to tell her supervisor what work she could or could not perform.

37. Thompson responded that she would schedule a meeting with Littlejohn; however, no such meeting was held.

38. On December 3, 2021, Littlejohn emailed Hutchison to confirm that he wanted her to assist two Deputy Directors with hiring, PDs, *etc.* He responded that he would appreciate any help she felt comfortable providing based on her experience.

39. On December 10, 2021, Hutchison emailed Littlejohn a document regarding training he wanted her to complete by March 31, 2022.

40. On December 16, 2021, Littlejohn emailed her Individual Development Plan to Hutchison for review and comment. Hutchison responded that he would review.

41. On information and belief, Hutchison met with Tomeka Gilbert (African American, protected activity unknown), Director, Business Operations Branch, Office of the Executive Director, CT-0301-16, whom Littlejohn also named as a responsible management official in her prior EEO cases, and Kern about Littlejohn's Program Analyst duties on that same day.

*Littlejohn proactively sought work assignments within her division.*

42. Because Hutchison was not assigning her work, Littlejohn reached out to other leaders within DCR, offering to work.

43. For example, on December 1, 2021, Littlejohn requested a meeting with Eileen Chotiner,

DCR Program Analyst, to discuss how she could assist her.  On December 2, 2021, Littlejohn met with Chotiner about areas where she could provide assistance.

44.   Similarly, on February 1, 2022, Littlejohn called an Associate Director in Risk Surveillance to ask about potential assignments.

### *Hutchison stopped communicating with Littlejohn in February 2022.*

45.   On February 15, 2022, Hutchison emailed Littlejohn to schedule a meeting with her.  He also sent her a spreadsheet containing a list of duties that he indicated corresponded with her PD.

46.   On February 16, 2022, Littlejohn forwarded the email she sent Thompson on November 24, 2021, to Tanisha Cole Edmonds, Chief Diversity Officer.  Littlejohn explained to Edmonds that there was still confusion about her role.

47.   Edmonds responded that she and Thompson spoke to the Division of Administration (DOA) about Littlejohn's request and that Thompson would follow up directly with Hutchison.

48.   Edmonds also said that DOA planned to prepare a spreadsheet that distinguished Business Manager duties, Program Analyst duties, and Administrative Support duties and to align it against Littlejohn's PD.  She said Thompson would discuss the forthcoming spreadsheet with Littlejohn and Hutchison.

49.   Littlejohn reminded Edmonds that Gilbert and Kern were the RMOs she named in her discrimination complaints and stated that she believed seeking their input would be a conflict of interest.

50.   On February 17, 2022, Littlejohn met with Hutchison to discuss the Program Analyst Duties Spreadsheet he sent her.  Littlejohn identified BMS and administrative duties listed in the spreadsheet.

51.   Hutchison took notes and commented that Littlejohn gave him a lot to think about, including

succession planning for another Program Analyst.

52.   Hutchison told Littlejohn he would need some time to consider before following up with her.

53.   Littlejohn asked Hutchison if he had consulted with anyone about the spreadsheet.  Hutchison responded that Gilbert, Kern, and former Chief Human Capital Officer KerriLaine Prunella provided input.

54.   Hutchison did not follow up with Littlejohn after the meeting.  Therefore, on February 23, 2022, Littlejohn emailed Hutchison a list of Program Analyst duties identified by an Associate Director in Risk Surveillance.

55.   On the same day, Hutchison responded that he would take the items into consideration.

56.   However, after that, Hutchison stopped directly communicating with Littlejohn and did not assign her any more duties.

### *Defendant involuntarily reassigned Littlejohn in May 2024.*

57.   Defendant did not assign Littlejohn any job duties until May 5, 2024, when it issued her a management directed reassignment (*i.e.*, involuntary reassignment) to the position of Program Analyst, Risk Surveillance Branch.

58.   Defendant irreparably damaged Littlejohn's career progress by refusing to assign her job duties for two and a half years.

59.   Because she had no duties, she had no way to gain experience, learn new skills, or earn performance bonuses or awards.

60.   Nor could Littlejohn obtain a promotion or another position.  During a job interview, she had nothing to tell a prospective employer about what she was doing in her current role.

## COUNT 1

### *Race Discrimination in violation of Title VII*

61. Littlejohn repeats and realleges the paragraphs above, as if fully set forth herein.

62. Defendant discriminated against Littlejohn based on race by refusing to assign her job duties from October 2021 to May 2024.

63. By and through its conduct, Defendant violated Title VII.

64. As a result, Littlejohn has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2

### *Retaliation in violation of Title VII*

65. Littlejohn repeats and realleges the paragraphs above, as if fully set forth herein.

66. Defendant retaliated against Littlejohn for engaging in protected activity by refusing to assign her job duties from October 2021 to May 2024.

67. By and through its conduct, Defendant violated Title VII.

68. As a result, Littlejohn has suffered damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## JURY DEMAND

Littlejohn demands a jury trial on both Counts.

## PRAYER FOR RELIEF

Wherefore, Littlejohn respectfully requests that this Court enter judgment against Defendant on all Counts, award Plaintiff lost wages and benefits; compensatory damages for pain and suffering; pre- and post-judgment interest; the amount of tax on any award; reasonable attorney's fees; litigation costs; and any other relief as is fair and just.

Dated: June 4, 2024                    Respectfully submitted,

                                       ALAN LESCHT AND ASSOCIATES, P.C.


                                       ___/s/ Sara McDonough_____

                                       Alan Lescht [441691]
                                       Sara McDonough [1022641]
                                       1825 K Street, NW, Suite 750
                                       Washington, DC 20006
                                       Tel (202) 463-6036
                                       Fax (202) 463-6067
                                       alan.lescht@leschtlaw.com
                                       sara.mcdonough@leschtlaw.com
                                       *Counsel for Plaintiff*